### SCHMITT v. TOBIN et al.
### No. 2598.

District Court, D. Nevada.
May 6, 1936.

See, also, 15 F.Supp. 35.

Platt & Sinai, of Reno, Nev., for plaintiff.

Ayres, Gardiner & Pike, Thatcher & Woodburn, and N. J. Barry, all of Reno, Nev., and Brobeck, Phleger & Harrison and Morrison, Hohfeld, Foerster, Shuman & Clark, all of San Francisco, Cal., for defendants.

NORCROSS, District Judge.

Defendant Reconstruction Finance Corporation has interposed a motion to transfer this case to the equity side of the court. The motion has been submitted upon briefs filed.

The case was originally instituted in a state court by the state superintendent of banks and, upon petition therefor, ordered removed. When the record on removal was received by the clerk of this court, the case was entered upon the law side.

The motion to transfer is based upon the grounds that "the cause of action alleged in the complaint * * * is wholly equitable, or partly equitable and partly legal and that the affirmative defenses * * * are equitable defenses."

The complaint comprises twelve typewritten pages exclusive of the prayer. The prayer is for judgment against the defendants and each of them jointly and severally:

"1. For the recovery of the possession of said notes, * * * and securities, or for the sum of $931,664.42, and that * * * in the event the recovery of the possession of said property * * * cannot be had, be a preferred claim * * * in payment out of the assets of said The Reno National Bank * * * over any and all general creditors * * * of said bank.

"2. For such other and further relief as to the Court seems meet and just in the premises and for costs of suit."

Among other allegations, the complaint in substance alleges, on information and belief, that during the months of May, June, July, and August, 1932, the Reno National Bank negotiated loans from the defendant Reconstruction Finance Corporation in the total sum of $2,785,087.25; that in part to secure said loans there was delivered by said Reno National Bank

to said finance corporation securities of the value of $931,664.42, the property of the Bank of Nevada Savings and Trust Company, a state bank, the capital stock of which state bank was owned pro rata by the stockholders of the Reno National Bank; that the directors and officers of said two banks were the same persons, and the business of the two banks was conducted in the same building; that in April, 1932, the said state bank had on deposit to its credit with the Reno National Bank $604,817.16; that in April, 1932, the Reno National Bank was indebted to the Crocker First National Bank of San Francisco in the sum of $715,880.66; that beginning some time prior to April 1, 1932, the cashier and assistant cashier of said Crocker First National Bank were invited by an officer or officers of the Reno National Bank and Bank of Nevada Savings & Trust Company to manage the business of said banks, and that they were so placed in charge without the authority of the board of directors of said two banks; that the said loans by the Reconstruction Finance Corporation to the Reno National Bank were begun and continued for the purpose of paying the said Crocker National Bank, and also to meet the demands made by its depositors; that at the time said loans were made the Reconstruction Finance Corporation knew that the Reno National Bank had not sufficient cash available with which to purchase said securities from the Bank of Nevada Savings & Trust Company and at the same time carry on its own banking business, and knew that said securities were taken from the assets of said Bank of Nevada Savings & Trust Company without any valuable consideration having been paid therefor; that the defendant Reconstruction Finance Corporation had knowledge of all the matters and things alleged in the complaint on information and belief at or prior to the time said assets were pledged with it as security for said loans.

The answer of the finance corporation in addition to denials of certain of the allegations of the complaint, among other allegations alleges that the notes in question had been indorsed in blank by the cashier of the said Bank of Nevada, and the liens had been by separate instruments in writing duly executed by its proper officers under its corporate seal before being transferred to the Reno National Bank, and the said finance corporation had no reason to suspect any want of authority for the transfer of said notes and liens, and would not otherwise have made such loans; that with full knowledge of the source thereof, the said Bank of Nevada received out of such loans over $200,000 in cash; that by means of the funds borrowed by the Reno National Bank both said banks were enabled to continue in business for several months longer.

Plaintiff's replication, in addition to denials, alleges that if the money borrowed upon the purported pledged securities of the said Bank of Nevada had been loaned to or deposited with said bank, it would not have been compelled to close at all; that the money so borrowed upon the securities of the Bank of Nevada caused the failure of both banks. The replication also denies all matter of estoppel.

It is clear from a reading of the complaint and the prayer thereof that equitable relief is sought particularly as against the receiver of the Reno National Bank. The relief sought against the receiver, "in the event recovery of the possession of said property * * * cannot be had," appears clearly to be based upon the view that the said notes and securities of the Bank of Nevada received by the Reno National Bank and by it delivered to the finance corporation were received by the Reno National Bank in trust, and that the receiver thereof took possession of the assets of said bank charged with such trust obligation. It is clear from the complaint that the receiver of the Reno Bank did not have the securities in question in his possession at the time the suit was instituted.

Assuming for the purposes of the statement about to be made that the complaint alleges facts which would entitle plaintiff to judgment for a return of the securities or their value as in a law action for replevin, the same allegations support similar relief in equity in that the defendant finance corporation is alleged to have received said securities with knowledge that they were not the property of the Reno Bank, but were by it held in trust. As in the state courts there is but one form of civil action and law and equity may be administered in the same action, care is not required, as in the federal courts, to state a cause

**40**

of action either at law or in equity. When a case is removed from a state court having such practice, it frequently becomes a question whether it should be filed on the law or equity side. If a case is removed which seeks both legal and equitable relief, sometimes it is necessary to reframe the pleading, with a resultant suit on the law side and another on the equity side.

Had this case originally been filed on the equity side, it is not readily apparent what contention could be urged that it should be transferred to the law side. While the complaint prays for return of property described in general terms, or in the event not returned judgment for its alleged value, instead of brief allegations of ultimate facts of possession, ownership, and value, there are many allegations apparently intended to establish a trust relation, and an alternative prayer for relief in the event a recovery may not be had for a return of the property or its value, which can have no other basis than a trust relationship. If the pleading is viewed upon the theory that it states a cause of action in replevin, trover, claim, and delivery, or any other legal remedy, then it is not clearly apparent why the Crocker First National Bank and the receiver of the Reno National Bank should have been made parties to the suit. It would appear from the complaint that counsel for the original plaintiff based the action mainly if not entirely on rights growing out of an alleged trust relationship.

It is the conclusion of the court that the complaint alleges a state of facts which if established would entitle plaintiff to the relief prayed for as against the defendant Reconstruction Finance Corporation either at law or in equity and in the alternative, if necessary, in equity as against the receiver. In the present state of the pleadings the case should be transferred to the equity side. If hereafter the equitable questions may be determined or eliminated so as to leave only a question or questions of law for decision, then such questions of law may be considered on or as upon the law side of the court. Twist v. Prairie Oil Co., 274 U.S. 684, 47 S.Ct. 755, 71 L.Ed. 1297; Liberty Oil Co. v. Condon Nat. Bank, 260 U.S. 235, 43 S.Ct. 118, 67 L.Ed. 232.

The motion to transfer to the equity side should be granted. It is so ordered.